Frank J. Kleinsmith and Elmor H. Kleinsmith, Trading as Kleinsmith Bros. Defendants in Error, v. Charles Baltz and Otto Diederichs, Trading as Baltz & Diederichs, Plaintiffs in Error.

Gen. No. 17,249.

1. SALES—*action for price.* Judgment for plaintiff in an action for a balance due for butter sold and delivered to defendant on the "Elgin basis" *held,* not against the evidence though the evidence is conflicting whether such butter was of the grade required by such basis.

2. SALES—*evidence.* In an action for a balance due for butter alleged to have been sold and delivered on the "Elgin basis," *held,* that the court without a jury was warranted in concluding that defendants in bad faith led plaintiff to believe that he would receive the Elgin price without charge for freight or commission and that such finding might legitimately be influenced by the apparent unfair methods employed by defendant.

Error to the Municipal Court of Chicago; the Hon. WILLIAM W. MAXWELL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed May 21, 1913.

DEFREES, BUCKINGHAM, RITTER, CAMPBELL & EATON, for plaintiffs in error; DON K. JONES, of counsel.

W. A. CUNNEA and JOSEPH P. RAFFERTY, for defendants in error.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

Frank J. Kleinsmith and Elmor H. Kleinsmith recovered a judgment against Charles Baltz and Otto Diederichs, plaintiffs in error, in the sum of $836.90, for an alleged balance due them for creamery butter sold and delivered to plaintiffs in error. The trial was before the court without a jury.

The butter was shipped by defendants in error in response to the following circular letter, received by

them from plaintiffs in error, dated February 16, 1910, to-wit:

"This letter is important to you. Illinois should ship their creamery butter to this large central market. We offered you 36c no freight no commissions, exactly what it sold at, at Elgin. Did you do better? We will take your butter on the Elgin basis, from now until the first of May, no freight no commission. We have no butter in cold storage, of any kind. We need your butter, prime quality, sweet flavored butter, for our fast growing trade. We want it now. We will send you a good advance as soon as we get the railroad receipt. The balance after receiving the butter. Ship right away. Mark the tubs B. & D. Chicago, write the full name in the railroad receipt and mail it to us. * * * You need no refrigerator. We are responsible for what we say."

Plaintiffs in error admit that they owed defendants in error a balance on butter shipped in the sum of $223.42, and deny that any greater sum is due for said butter. There is no dispute as to the number of the shipments or as to the weights thereof.

Plaintiffs in error contend simply that the court erred in allowing defendants in error the Elgin prices for butter instead of the market prices at Chicago. The expert evidence in the record without question proves that the Elgin butter district includes the states of Iowa, Wisconsin and Illinois, and that the "Elgin basis" is a well recognized trade term with a well defined meaning among the butter men of that district; that butter sold on the Elgin basis means that it sells for the Elgin price published every week by the Elgin Board of Trade, which price is a one price only for each week, and for one grade of butter only, known as "extra," and that butter must score 93 points or better when inspected to come within the grade, "extra." Plaintiffs in error also argue that as the butter was sold and delivered to them on the Elgin basis the burden of proof was on the defendants in error to prove that the butter in question graded

as extra, and that having failed so to do the plaintiffs in error were entitled to retain the butter on the payment of the market value thereof in Chicago, as shown and proved for the days on which the butter was delivered to them in Chicago. If it be conceded that plaintiffs in error are correct in their theory, we cannot say that the judgment is against the manifest weight of the evidence. The undisputed evidence of the defendants in error, as testified to by their expert and apparently disinterested witness, L. C. Carmichael, shows that a custom prevails in the Elgin district, when butter is sold on the Elgin basis, for the buyer to notify the shipper if it scores under the grade, extra, immediately after that fact is ascertained, and that it is left to the shipper to say what shall be done with it, as the buyer is not bound to accept it unless it grades as extra. This witness also testified that his firm, the H. W. Carmichael Cream, Milk and Butter Company of Rockford, Illinois, deals only in one grade of butter, extra, and that during the months of February, March and April, 1910, the same months in which the butter in question was sold and delivered to plaintiffs in error, his company bought butter of defendants in error, and that all the butter received of them by his firm in those months was extra and would grade on inspection as extra on the Elgin basis, and that he has had an experience of fifteen years in dealing with butter. F. J. Kleinsmith, a defendant in error, testified also that his firm shipped butter to Carmichael's firm in said months in fifty pound lots, cut up in print pounds, and that it was the identical same kind of butter shipped to plaintiffs in error, and out of the same churns and that the only difference in print pounds and tub butter, as shipped to plaintiffs in error, is that the tub butter is put up in bulk and not in pounds. He names two dates, March 29th and April 13th, that he shipped to Carmichael's company butter out of the same churns and same churnings as he shipped to plaintiffs in error on March 30th and

April 13th. By examination of the table below it will be seen that this butter that scored 93 in Rockford, Illinois, on those dates, scored only 86 in Chicago March 30th, and on April 13th ten tubs thereof scored only 80, and fifteen tubs only scored 87, as reported by plaintiffs in error.

Opposed to this testimony as to the scoring of the butter in question, plaintiffs in error introduced three witnesses, including themselves. Frank I. Woolverton, a butter inspector for the Elgin Board of Trade, testified that he inspected butter for plaintiffs in error during said months and that the butter scored on each particular date, as indicated in said table below, and identifies his inspection certificates, and that none of it scored as high as 93, extra, but he could not or did not identify the butter inspected as the butter in question. Charley Baltz identified the butter inspected as the butter in question by reference to the numbers on the certificates of inspection, and by an examination of their books and the railroad receipts, and testified that none of the butter graded as high as extra. He also testified that the first column of prices furnished in said table below were the correct Chicago market values of butter scoring according to said table on the dates therein set forth. Otto Diederichs simply identified the butter inspected as the butter in question by reference to their books, the railroad receipts and said certificates of inspection.

The following table, above referred to, beginning with the first column on the left and reading to the right, shows these facts in their order concerning said shipments of butter, by defendants in error, to-wit: the date of shipment weight at creamery in pounds, loss of weight in Chicago, scoring on inspection, Chicago price per pound, the Elgin price per pound claimed by defendants in error, and the value of the shipment at the Elgin price. The first total is the total value at the Elgin price and the second total, the total value at the Chicago price.

Kleinsmith et al. v. Baltz, 180 Ill. App. 369.

| Feb | 17th | 298 | 9 | 87 | 25c | 28c | $ | 83.44 |
|---|---|---|---|---|---|---|---|---|
| Feb. | 24th | 900 | 50 | 85 & 86 | 22 & 24c | 30c | | 270.00 |
| Mar. | 2nd | 480 | 23 | 85 | 22c | 31c | | 148.80 |
| Mar. | 8th | 300 | 12 | 86 | 24c | 31c | | 93.00 |
| Mar. | 9th | 240 | 12 | 86 | 24c | 31c | | 74.00 |
| Mar. | 16th | 699 | 33 | 82 | 21c | 31c | | 216.69 |
| Mar. | 24th | 378 | 7 | 84 | 23c | 32c | | 120.96 |
| Mar. | 25th | 441 | 20 | 86 | 26c | 32c | | 141.12 |
| Mar. | 30th | 441 | 4 | 86 | 27c | 32c | | 141.12 |
| Mar. | 31st | 385 | 19 | 84 | 24c | 32c | | 123.20 |
| Apr. | 6th | 1107 | 136 | 80 & 86 | 21 & 25c | 31c | | 343.17 |
| Apr. | 13th | 1600 | 108 | 80 & 87 | 21 & 29c | 31c | | 496.60 |

$2,252.10
1,638.42

Plaintiffs in error admit that they received from the defendants in error a bill for every shipment of said butter at the Elgin price, and that they never objected thereto, nor informed defendants in error what any of the butter scored when inspected, nor gave the information to them that they would not pay for it at the Elgin price, until a final statement and remittance was mailed by them April 21, 1910, after all the butter had been shipped. On the contrary, the letters written by them to defendants in error were apparently framed with a view to lead the defendants in error to believe they would receive the Elgin price for their butter, and without charging them freight or commission. Remittances were generally delayed as a rule until the next shipment was on its way to Chicago, and while objections were continually made, they were apparently made in a way not to stop the shipments of butter, nor to make clear their intention to not accept or pay for it as extra. The remittance for the first shipment included a premium of $1.56 over the Elgin price of 28c and no freight or express charges were deducted. In their final statement they reduced the price of this shipment to 25c per pound and deducted $2.10 express charges, reducing the remittance for this shipment from $85 to $70.15. The complaints

of plaintiffs in error got louder and more pronounced and their remittances smaller in per cent, and less frequent as the shipments continued to grow larger, and some advice was kindly offered to defendants in error in one of these delayed letters of plaintiffs in error apparently as an evidence of their good faith, and desire for good butter, and to enable defendants in error to come up to the desired standard. Finally, defendants in error ceased shipping butter before the season ended, and in the lower court a cross demand was filed by plaintiffs in error for damages for failure to deliver butter the full season as agreed, and which butter they had reported as not at all satisfactory for their trade. The cross demand was not pressed in the lower court and it is not pressed in this court, but it is insisted strenuously that there is no evidence in this record of bad faith on their part toward defendants in error. We think the lower court was well warranted in concluding otherwise, and that its finding in this case might be legitimately influenced by the apparent unfair methods employed in their dealings with defendants in error.

As bearing upon this conclusion we quote from some of the correspondence. On February 19th, on receipt of the first shipment, plaintiffs in error promptly wrote defendants in error as follows:

"Your five tubs of butter received and we will pay you 28c (the Elgin price) with the understanding that we take your butter on the Elgin basis each week during the season. We prefer to have you ship the butter by freight and as soon as we get the railroad receipt for the next shipment we will mail you a check. We need your butter for our fast growing trade and we pay a premium for quality. Tell us how much you are going to ship us now and how much during the flush? * * * We think you quite understand us. You want a good market for butter."

Defendants in error replied February 22nd as follows:

Kleinsmith et al. v. Baltz, 180 Ill. App. 369.

"Your letter received; in regard to it will say we will make you shipment as soon as next Freight leaves at Leaf River we shipped you the lot from Adeline the later part of last week we will take Elgin price for our Butter till first of May do you handle print Butter if so give us offers on it."

The second shipment was made February 24th, and on March 1st, the very day the second shipment was inspected, without any reference to said shipment, plaintiffs in error remitted for the first shipment and wrote to defendants in error as follows:

"Enclosed please find check No. 7805, amount $85.00. Referring to your 5 tubs of butter for which you sent us a bill of lading dated the 17th received here, being the first lot. This shipment would be satisfactory but the flavor is not what it should be, so that the butter will not do for our fancy finest trade. Would lose money if we took it in at full price for our regular trade as best quality. Such butter is not satisfactory and can not pay you the price under any circumstances if this lot should be taken by itself or on its own merits. However, if you ship us right along all of your make, regular each week, to the end of the season on the Elgin basis and the butter shows such improvement as to be a grade that we could put out to our trade at top notch price as best butter for the season when made, we would be willing to try it, take this first lot, paying the price, standing the loss on it, storing it and run the chance of getting out whole later as may seem best to us."

After receiving an urgent request from defendants in error on March 3rd to remit for the second shipment, plaintiffs in error on March 8th replied as follows:

"Referring to our letter of March 4th in reference to the 9 tubs and the 6 tubs, the quality is not as good as the first. It don't show the improvement in quality that we expected. Enclosed find check amounting to $150."

On March 24th plaintiffs in error wrote as follows:

"As per your letter of March 1st, we are disap-

pointed that the quality of your butter don't improve. Your last shipment is in, and if anything, it is not as good as the previous shipments. We have reason to expect of you, this time of the year, an increase in quantity and improvement in quality. * * * How many tubs of butter are you going to ship each week, and when is your shipping day? * * * The difficulty seems to be with your cream, it don't arrive close enough to the cow's teats. The longer you keep it away from delivery, the more stale your cream will be, and you can not make good butter that will score extras, from stale cream. We want to help you build up the dairy interest in your district, and it can only be done with intelligent handling of the raw material. Mail us a railroad receipt promptly for each shipment that you make, and ship close to the churn.''

There is no reversible error in this record and the judgment is affirmed.

*Affirmed.*